[Cite as *In re V.R.*, 2017-Ohio-2775.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: V.R. ALLEGED DEPENDENT/NEGLECTED/ABUSED | : : : : | JUDGES: Hon. Patricia A. Delaney, P.J. Hon. John W. Wise, J. Hon. Craig R. Baldwin, J. |
| IN THE MATTER OF: G.R. ALLEGED DEPENDENT/NEGLECTED/ABUSED | : : : : : : : : | Case Nos. 16-CA-31 16-CA-32 O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Guernsey County Court of Common Pleas, Juvenile Division, Case No. 15JC00543

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      May 11, 2017

APPEARANCES:

For Plaintiff-Appellee:

MELISSA M. WILSON
GUERNSEY CO. CHILDREN'S SERV.
274 Highland Ave.
Cambridge, OH 43725

JOEL BLUE, Guardian Ad Litem
145 N. 7th St.
Cambridge, OH 43725

For Defendant-Appellant:

RONALD C. COUCH
217 North Eighth St.
Cambridge, OH 43725

MICHAEL GROH
1938 Wheeling Ave.
Cambridge, OH 43725

*Delaney, P.J.*

{¶1}   Mother appeals from the November 30, 2016 Journal Entry of the Guernsey County Court of Common Pleas granting appellee Guernsey County Children's Services' ("GCCS") motion for permanent custody of her two children, V.R. and G.R.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother and Father are married and have two minor children together: V.R. and G.R.  GCCS began its involvement with this family in January 2015 and opened a second case in May 2015.  Concerns reported to the agency included the children had insufficient diapers, wipes, and formula; the family missed important medical appointments; and both parents struggled with drug and alcohol addiction.

{¶3}   The agency provided case management services throughout the pendency of the case.  Mother and Father were both referred for drug and alcohol treatment; an in-home safety plan went into effect on September 4, 2015 with a grandparent supervising; and the parents were given gas cards to enable them to get to doctor appointments.

{¶4}   The office manager of the children's pediatrician, Dr. Lall, testified at the permanent custody hearing.  Dr. Lall was concerned especially with G.R., a child who failed to thrive.  Mother continually reported G.R. was throwing up and wouldn't eat, but failed to follow through with weight-check appointments.  Dr. Lall changed the formula but there was no positive weight gain.  The doctor's office referred the family to Help Me Grow, but they did not follow through with appointments or allow agencies into the home for visits.  (The office manager reported that agencies would knock on the door at the home and no one would answer the door, but Mother answered the phone when the doctor's office called).

{¶5} When G.R. was fed in the doctor's office, he drank "like crazy," as though he was starving. G.R. was admitted to Akron Children's Hospital at one point and started gaining weight while hospitalized. The parents were not cooperative in follow-up with the pediatrician or specialists. In 2015, the parents missed 18 appointments out of 28 scheduled. The parents argued with Dr. Lall about treatment but inconsistencies were apparent: the parents claimed specialists at Akron Children's Hospital gave recommendations that were proven to be false, and the family claimed WIC wouldn't give them milk when in fact WIC reported the milk was available but they never picked it up. On June 10, 2015, G.R. was nine months old but weighed only 13.8 pounds. The office manager reported G.R. was always below three percent on the growth chart of where he should be for his age.

{¶6} The children came back to Dr. Lall after they were placed in foster care, and the office manager described the improvement as a "100-degree turn," reporting both children as healthy and happy. G.R. is currently gaining weight and the foster parents do not miss appointments.

{¶7} On September 25, 2015, GCCS was granted temporary custody of the children in an emergency proceeding. The grandparent refused to supervise the safety plan any longer because of drug abuse issues with both parents and their failure to comply with the safety plan. Father took V.R. to a bar and proceeded to overdose on heroin. Mother was believed to be high on methamphetamine because she was hallucinating and cutting the grass with a pair of scissors. On the day of the children's removal, Mother was at home alone with the children and V.R. was outside, clad only in a shirt, with no diaper, pants, socks, or shoes on.

{¶8} On September 29, 2015, the trial court found probable cause to believe the children were dependent/neglected and continued the temporary custody of GCCS.

{¶9} Both parents' visits with the children were highly erratic. Father had a total of 33 visits scheduled and attended 16. Mother had a total of 40 visits scheduled and attended 8. During visitation, Mother was observed to be more closely bonded with V.R. to the extent that she ignored G.R. as the child crawled at her feet and had to be told to pick him up and give him attention. Eventually the agency required Mother to call if she planned to show up for visitation so the agency could arrange for the foster parents to bring the children to prevent the children from attending visits Mother didn't show up for.

{¶10} Mother did not appear at the adjudicatory hearing on December 1, 2015. Mother's counsel requested a continuance, which was denied. The trial court found the children to be dependent and continued the custody of GCCS.

{¶11} Mother again failed to appear at the dispositional hearing on December 21, 2015; another continuance was requested and denied. Custody of the children remained with GCCS.

{¶12} Mother again failed to appear for the review hearing on March 16, 2016; another continuance was requested and denied. Mother's last visit with the children was May 6, 2016 and she had no interaction with the agency after that. Mother failed to appear at another review hearing on June 13, 2016.

{¶13} Father's last visit with the children was January 6, 2016. He was thereafter removed from the case plan because he was incarcerated with an out date of March 28, 2018.

{¶14} Mother's case plan included requirements that she attend all doctor appointments and follow recommendations for G.R.'s care; attend Help Me Grow and follow recommendations; obtain a drug and alcohol assessment and follow recommendations; submit to random drug screens; meet the children's basic needs on a daily basis; sign all releases and referrals; and complete a parenting assessment. Mother was incarcerated on September 23, 2016 so her ability to complete the case plan requirements was limited.

{¶15} Prior to incarceration, she took 11 drug screens and 8 were positive for amphetamines, methamphetamine, and/or heroin. She tested positive at her last visit with the children on May 16, 2016. Her residence was not appropriate for reunification because she was shot in the stomach by the homeowner, who is also the father of her boyfriend. Her boyfriend was arrested because he was found in possession of a "needle of heroin." The father's case is the case in which Mother was held as a material witness.

{¶16} GCCS had scheduled reunification conferences every 90 days to discuss progress on the case plan and adjust recommendations as needed. The parents received written notification of the conferences and out of 6 conferences held in this case, Mother attended one. Mother did not communicate with the agency after visitation was terminated. The ongoing caseworker spoke with Mother in jail if she saw her name on the jail roster list.

{¶17} On July 7, 2016, Mother came to the agency to say she was on probation and ready to work her case plan, but she took no steps to work the case plan.

{¶18} On August 10, 2016, a permanent custody hearing was scheduled for November 17, 2016. An annual review hearing was held on September 23, 2016 and temporary custody remained with GCCS.

{¶19} Mother and Father appeared at the permanent custody hearing on November 17, 2016 because they were both transported to the hearing as prisoners by the Guernsey County Sheriff: Mother was being held in the Guernsey County Jail as a material witness and Father was incarcerated at Noble Correctional Facility.

{¶20} The trial court granted GCCS' motion for permanent custody by journal entry dated November 30, 2017.

{¶21} Mother now appeals from the Journal Entry of the trial court dated November 30, 2017, and raises three assignments of error:

## ASSIGNMENTS OF ERROR

{¶22} "THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH THE MOTHER IN A REASONABLE AMOUNT OF TIME PURSUANT TO O.R.C. SEC. 2151.414(B)(2)."

{¶23} "THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN UNDER O.R.C. SEC. 2151.414(D)."

{¶24} "THE TRIAL COURT'S DECISION ADJUDICATING THE CHILDREN TO BE DEPENDENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION."

**ANALYSIS**

**I., II., III.**

{¶25} Mother's three assignments of error are related and will be considered together. Mother contends the trial court should not have granted GCCS' motion for permanent custody of V.R. and G.R. We disagree.

{¶26} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶27} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶28} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶29} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶30} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶31} In this case, the trial court found the following factors applicable:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

* * * *.

(d) The child has been in the temporary custody of one or more public children services agencies or private child

placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶32} Both children have been in the temporary custody of GCCS for the requisite period of time, having been in agency custody continuously since September 25, 2015. Mother has not visited the children since May 16, 2016 and has had a total of eight visits with the children since they came into custody. R.C. 2151.414(B)(1)(b) states the trial court may grant permanent custody if the child is abandoned. Abandonment is defined in R.C. 2151.011(C) as, "a child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." May 16, 2016 until the hearing date of November 27, 2016 is in excess of 90 days.

{¶33} Mother has refused to work her case plan and consistently tests positive for illegal drugs. She has been unable to maintain sobriety for any meaningful length of time and has not demonstrated an ability to remain sober when responsible for the children. She has demonstrated an inability to care for the children's basic day-to-day needs, much less any specialized care G.R. may require as a result of his failure to thrive. Mother

testified at the hearing that upon her release from jail as a material witness, she will return to the home of the person who shot her.

{¶34} Clear and convincing evidence exists in the record supporting the trial court's conclusion that V.R. and G.R. could not and should not be placed with Mother within a reasonable amount of time and that Mother abandoned the children.

{¶35} Having found appellee established the "first prong" of its burden pursuant to R.C. 2151.414(B)(1)(a), (b), and (d), we now turn to the question of the best interests of V.R. and G.R.

{¶36} To fulfill the second prong of the permanent custody analysis, the trial court must find by a showing of clear and convincing evidence that an award of permanent custody is in the best interests of the child. R.C. 2151.414(D). The trial court must consider all relevant factors, including but not limited to:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or

the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶37} Mother argues that while the children were in the temporary custody of the agency, she was either incarcerated in the Guernsey County Jail or in the hospital and this is "not completely [her] fault" because she was in jail as a material witness. Mother spent a total of 8 hours with the children while they have been in agency custody. At the last visit Mother attended, she pulled up her shirt and showed the foster mother and the children an incision, stating "that's why I haven't been here." Mother testified she "got clean" while she was in jail on the material witness warrant, but acknowledged she has only maintained her sobriety while she was on probation and she is not currently on probation. Mother acknowledged she has struggled with drug addiction since age 11 and was on Suboxone or Subutex while pregnant with both children. Both were born underweight and premature.

{¶38} By all accounts the children are thriving in foster care. They have been with the same foster family throughout their placement and the family has a son the same age as V.R.; the two are "best friends." V.R. and G.R. have become bonded as siblings as well. When they came into care, V.R. was "scared of everything" including police, talked about guns and knives, and worried that "Daddy would kill Mommy." G.R. was a year old but developmentally was an infant unable to crawl or walk, requiring a bottle to be fed. He was physically tiny and had no teeth or hair. Both children are now meeting milestones although they have some developmental delays and problems with anger. Both children have fetal alcohol syndrome and the foster parents have received instruction in how to cope with these resulting issues. The foster mother testified that G.R. was too young to remember Mother and Father, but V.R. had a close connection with Father.

{¶39} Both the Guardian ad Litem and the court-appointed Special Advocate recommended permanent custody be granted to GCCS.

{¶40} As the agency's counsel pointed out, these children were in agency custody for 420 days prior to the permanent custody hearing, and in that time Mother spent 8 hours with them. Even before her incarceration, Mother failed to demonstrate any commitment to working the case plan; she failed to come to meetings, reunification conferences, court dates, and scheduled visitations. She failed to complete parenting assessments and made no meaningful progress with substance abuse treatment. She testified she became sober in jail, but her addiction issues have resurfaced before after periods of sobriety, as acknowledged by the guardian ad litem. The children deserve permanency.

{¶41} Upon this record, we find the trial court's decision that it was in the best interests of V.R. and G.R. to be placed in the permanent custody of GCCS is supported by the evidence and is not against the manifest weight of the evidence.

{¶42} Mother's three assignments of error are overruled.

## CONCLUSION

{¶43} Mother's three assignments of error are overruled the judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P.J.,

Wise, John, J. and

Baldwin, J., concur.